546 A.2d 83

COMMONWEALTH of Pennsylvania

v.

Fred THEK, Jr., Appellant.

Superior Court of Pennsylvania.

Submitted Dec. 10, 1987.

Filed July 14, 1988.

392

Marshall E. Anders, Stroudsburg, for appellant.

Michael E. Weinstein, District Attorney, Milford, for Com., appellee.

Before WIEAND, KELLY and HESTER, JJ.

KELLY, Judge:

Appellant, Fred Thek, Jr., appeals from judgment of sentence imposed following his conviction of statutory rape, rape, involuntary deviate sexual intercourse, indecent assault, incest, corruption of minors, and terroristic threats. We reverse and remand for a new trial.

Appellant contends on appeal that: (1) trial counsel rendered ineffective assistance; (2) the trial court erred as a matter of law in its instruction to the jury based upon the jury's question concerning the forcible compulsion element of the charge of rape;[1] (3) the charges against the appel-

---

[1] Though we remand on other grounds, we note that we find no merit to this claim. Indeed, review of the trial court's supplemental charge discloses that if there was error in the charge on this issue, it was in favor of the appellant. Nonetheless, on remand we call the trial court's attention to *Commonwealth v. Rhodes*, 510 Pa. 537, 510 A.2d 1217 (1986), which provides clear instruction as to the proper construction of the "forcible compulsion" requirement in cases such as this. The recent plurality decision in *Commonwealth v. Mlinarich*, 518 Pa. 247, 542 A.2d 1335 (1988) does not alter our opinion on this

lant should have been dismissed since he was not brought to trial within the period mandated by Rule 1100;[2] (4) counts I, XI, XV, XVI and XVII of the information filed against the appellant should have been dismissed; (5) the trial court erred as a matter of law in improperly restricting the cross-examination of the alleged victim thereby denying the appellant his right to confront witnesses against him;[3] and (6) the judgment of guilty of the charge of terroristic threats should have been arrested and the appellant should be discharged thereon as the jury's verdict in this regard was against the weight of the evidence. After a thorough review of the record and the applicable authority, we find appellant's first, fourth and sixth issues have merit. Accordingly, we vacate the judgment of sentence and remand for a new trial in accordance with this opinion.

## FACTS AND PROCEDURAL HISTORY

On November 13, 1985, the appellant was arrested and charged with the crimes of statutory rape, rape, involuntary deviate sexual intercourse, indecent assault, incest, corruption of minors, and terroristic threats. The charges arose from appellant's sexual abuse of his minor daughter.

issue. The narrow voluntariness issue presented in *Mlinarich* is in no way applicable to this case, and *Rhodes* is otherwise undisturbed.

2. If this claim had merit, we would discharge entirely rather than remand; however, we find this claim is also without merit. On April 25, 1986, the Commonwealth filed a timely Rule 1100(c) petition requesting an extension of time to commence trial on the basis that the victim was in the advanced stages of pregnancy. Appellant argues that because the victim was able, physically and emotionally, to be interviewed by a psychotherapist on April 29, 1986, the victim could have testified and the trial court abused its discretion in granting the petition. Appellant's argument is predicated on the erroneous assumption that the physical stress of being interviewed and counseled by a psychotherapist who is trained to treat victims of incest is comparable to the physical stress likely to be experienced upon being cross-examined by the alleged abuser's attorney in open court regarding the incestuous sexual abuse she suffered. We find that the Commonwealth met its burden of proof and the trial court did not abuse its discretion in granting the timely Rule 1100(c) petition.

3. In view of our disposition of issues one, four and six, we need not address appellant's claim that the trial court improperly limited cross-examination.

The criminal information alleged that: the statutory rape occurred during the summer of 1980 through 1981 (count I); the incest occurred during the summer of 1980 through 1981 (count XI) and during the period from the summer of 1980 through November 5, 1985 (count XVII); and the corruption of minors charge was based upon actions which occurred from the summer of 1980 through November 5, 1985 (count XV). The information contained no date or time period when the terroristic threats occurred (count XVI). The remaining counts relate to acts which occurred on October 16, October 22, and November 5, 1985 (counts II–X, XII, XIII and XIV).

Defense counsel filed numerous pre-trial motions to dismiss, which were denied. The trial was originally scheduled for the May Term, but was continued to the July Term upon the motion of the Commonwealth due to the victim's advanced pregnancy.

Trial commenced on July 8, 1986. On July 10, 1986, the jury found the appellant guilty on all counts. Thereafter, trial counsel filed timely post-verdict motions. On October 8, 1986, current counsel filed an entry of appearance and requested leave to file supplemental post-verdict motions *nunc pro tunc* which was granted.

On February 23, 1987, an evidentiary hearing was held regarding alleged ineffective assistance of trial counsel. Five witnesses were called, including an attorney qualified as an expert in criminal law. By opinion and order dated May 8, 1987, the trial court denied appellant's post-verdict motions. On May 28, 1987, appellant was sentenced to an aggregate term of imprisonment of ten to twenty-three years. This timely appeal followed.

## I.

■ Appellant's first contention is that he was rendered ineffective assistance of counsel and therefore he is entitled to a new trial. He claims counsel was ineffective for the following reasons: (1) introducing the report of the Commonwealth's expert and placing before the jury the Com-

monwealth's expert's opinion that the victim was credible; (2) eliciting from the victim on cross-examination testimony relating to alleged sexual abuse in Arizona in 1979; (3) failing to call witnesses to impeach and rebut statements made by the victim; (4) failing to call proper character witnesses; (5) failing to produce those witnesses who could testify concerning previous false accusations of rape made by the victim; (6) failing to lay proper foundation for the introduction of the victim's school and medical records; and (7) failing to object to the introduction of the picture of a normal male scrotum area, during the rebuttal testimony of Dr. Umkey. After a thorough review of the record and applicable case law, we find appellant's first claim of ineffectiveness has merit. Accordingly, we vacate judgment of sentence and remand for a new trial. In light of our disposition on appellant's first claim of ineffectiveness, we need not address appellant's remaining ineffectiveness contentions.

The burden of establishing ineffective assistance of counsel rests upon the appellant. Additionally, the law presumes that counsel is effective. *Commonwealth v. McNeil,* 506 Pa. 607, 487 A.2d 802 (1985); *Commonwealth v. Petras,* 368 Pa.Super. 372, 534 A.2d 483 (1987). "In this Commonwealth we have long used, to gauge the ineffectiveness of counsel's stewardship, the test set forth in *Commonwealth ex rel. Washington v. Maroney,* 427 Pa. 599, 235 A.2d 349 (1967)." *See Commonwealth v. Petras, supra,* 534 A.2d at 484 *citing Commonwealth v. Saxton,* 516 Pa. 196, 201, 532 A.2d 352, 354 (1987) (citing cases). In *Commonwealth ex rel. Washington v. Maroney, supra,* the process of measuring the ineffectiveness of counsel was described by our Supreme Court as follows:

Our task ... encompasses both an independent review of the record, .... and an examination of counsel's stewardship of the now challenged proceedings in light of the available alternatives .... We cannot emphasize strongly enough, however, that our inquiry ceases and counsel's assistance is deemed constitutionally effective once we

are able to conclude that the particular course chosen by counsel had *some reasonable basis* designed to effectuate his client's interests. The test is *not* whether other alternatives were more reasonable, employing a hindsight evaluation of the record. Although weigh the alternatives we must, the balance tips in favor of a finding of effective assistance as soon as it is determined that trial counsel's decisions had any reasonable basis.

235 A.2d at 352–53. (Emphasis in original). Our Supreme Court also made clear that, for relief to be granted, the accused must demonstrate that counsel's ineffectiveness worked to his prejudice:

Since our test requires that we examine the approach employed by trial counsel in light of the available alternatives, a finding of ineffectiveness could never be made unless we concluded that the alternatives not chosen offered a potential for success *substantially greater than the tactics actually utilized.*

235 A.2d at 353 n. 8. (Emphasis added). *See also Commonwealth v. Petras, supra,* 534 A.2d at 485.

Thus, in order to establish a claim of ineffectiveness, appellant must establish that: by act or omission counsel was arguably ineffective; counsel's act or omission could not have had a reasonable basis designed to effectuate appellant's interests; [4] and appellant was prejudiced by the act or omission in that but for the arguably ineffective act or omission there is a reasonable probability that the result would have been different. *Commonwealth v. Petras, supra,* 534 A.2d at 485; *see also Commonwealth v. Pierce,* 515 Pa. 153, 159–60, 527 A.2d 973, 975–76 (1987).

With these principles in mind, we now consider appellant's claim. Appellant maintains that trial counsel ren-

4. The test is objective rather than subjective. If the court determines that a reasonable basis designed to effectuate the appellant's interests exists for a particular act or omission, then, regardless of counsel's purported subjective motivations for the act, appellant cannot be said to have been denied a fair trial. The reasonableness of the act or omission precludes a finding of ineffectiveness. *Commonwealth ex rel. Washington v. Maroney, supra. See also Kitrell v. Dakota,* 373 Pa.Super. 66, 73, 540 A.2d 301, 305 (1988).

dered him ineffective assistance by introducing into evidence the report of the Commonwealth's expert. Appellant contends that by introducing this report counsel placed before the jury the expert's opinion of the credibility of the victim. Therefore, appellant argues, the report was inadmissible as a matter of law and counsel's use of it constituted ineffective assistance of counsel. We agree.

In *Commonwealth v. Pearsall*, 368 Pa.Super. 327, 534 A.2d 106 (1987), we addressed this particular issue and summarized the admissibility of such testimony as follows:

> In *Commonwealth v. Baldwin*, 348 Pa.Super. 368, 502 A.2d 253 (1985), this Court held that expert testimony regarding the general behavioral and psychological characteristics of child sexual abuse victims was admissible in a case involving child sexual abuse. In *Commonwealth v. Seese*, 512 Pa. 439, 517 A.2d 920 (1986), our Supreme Court held that expert testimony as to the veracity of a child sexual abuse victim impermissibly encroached upon the province of the jury and that the trial court abused its discretion by admitting such evidence. Upon review of the majority and concurring opinions in *Commonwealth v. Seese, supra,* we find nothing to suggest that our holding in *Commonwealth v. Baldwin, supra,* has been disturbed. We note that there is a fundamental distinction between expert testimony which supports the credibility of a witness inferentially by establishing that a witness' testimony is *consistent* with the acts and responses evidenced in known child abuse cases, and expert testimony which presumes to pass directly upon the *veracity* of a particular witness. We read *Commonwealth v. Seese, supra,* to permit the former and prohibit the latter. *Cf. Kozak v. Struth*, 515 Pa. 554, 531 A.2d 420 (1987) (expert opinion based upon the totality of conflicting evidence usurped jury's function).

534 A.2d at 108–09 n. 1.

In *Commonwealth v. Davis*, 359 Pa.Super. 626, 515 A.2d 617 (1986), a panel of this Court construed *Baldwin* to permit an expert, who never examined the victim, to testify

that children who report sexual abuse generally do so based on actual experience and that children do not generally fantasize or fabricate such experiences. Our Supreme Court reversed the decision in *Davis,* finding that the testimony invaded the province of the jury by presuming to pass upon the veracity of the witness. The court also found that to the extent that *Baldwin* permitted such testimony it was in conflict with *Seese* and it was *to that extent* overruled. *See Commonwealth v. Davis,* 518 Pa. 77, 79–84 & n. 1, 541 A.2d 315, 316–18 & n. 1 (1988). We find that the recent decision in *Davis* supports and clarifies the distinction suggested in *Pearsall.* We also find the distinction to be controlling in the instant case.

■ The record reveals that trial counsel introduced into evidence, during cross-examination of the victim, the report prepared by the Commonwealth's expert, Ralph Battinieri. (N.T. 7/8/86 at 51). Later, during direct examination of Mr. Battinieri, the prosecutor read into evidence the following statement contained in the report: "[P.T.] presents every clinical feature reported and observed in children who have been sexually assaulted within the family. *Without reservation, her account of ongoing sexual abuse, beginning at age eleven, and continuing throughout much of her adolescence, is credible."* (N.T. 7/8/86 at 102–03). (Emphasis added). Moreover, the following exchange between the prosecuting attorney and the expert witness occurred on re-direct examination:

Q.  ... You were asked by Mr. Sposito regarding your concern for the credibility of [P.T.], when she said to you, when she told you the story about the chickens being decapitated and the dog being killed. You indicated you said initially yes, it could have some affect on her credibility. *After conducting the rest of your examination were you concerned about her credibility at that time?*

A. *No, sir, not at all.*

(N.T. 7/8/86 at 138). (Emphasis added). A review of the report itself discloses that it contained four statements

relating to the credibility of the victim.[5] (Defendant's Exhibit No. 3). While there is nothing objectionable *per se* about statements that the physical evidence and the victim's statements were consistent with physical evidence and statements in known child abuse cases, the expert in this case exceeded the permissible bounds of such testimony when he went on to specifically state that the victim "was credible." Such testimony invaded the province of the jury by presuming to pass directly upon the veracity of the witness. As such, that portion of the report as well as the opinion testimony of the expert were inadmissible and trial counsel erred in permitting its introduction into evidence. *See Commonwealth v. Davis, supra; Commonwealth v. Seese, supra.* No objectively reasonable basis for permitting the admission of that evidence existed. Furthermore, we find that the testimony was necessarily prejudicial to appellant as the victim's credibility was the linchpin of the prosecution's case. *Cf. Commonwealth v. Davis, supra,* 518 Pa. 83–86, 541 A.2d at 318–19.[6] Consequently, ap-

---

**5.** In addition to the statement read into evidence by the prosecutor, noted in the text *supra,* the following statements were also contained in the report:

> Clinically the report provided by [P.T.] is, *without reservation, credible in every respect* and indicates a child who has endured both emotional and sexual abuse—and has, most probably protected, to some degree, both her siblings and mother from the violence of her natural father ... *Her report is credible....*

(Defendant's Exhibit No. 3 at 8–9). (Emphasis added).

\* \* \* \* \* \*

> *Given the credibility of [P.'s] report,* a full investigation of all the children is warranted.

(Defendant's Exhibit No. 3 at 11). (Emphasis added).

**6.** We note that there was an objectively reasonable basis for *using* the report. The prosecution's entire case rested on the testimony of the victim and the expert. Defense counsel sought to discredit the expert's testimony by impressing upon the jury the fact that the psychotherapist's only source of information was the victim, and that the information upon which he based his findings was not credible. (*See* N.T. 7/8/86 at 53–66, 103–38, and 139–40). There was, however, no objectively reasonable basis for failing to have the inadmissible statements regarding the expert's assessment of the child victim's credibility redacted prior to the report's introduction into evidence, nor for failing to object when the prosecution read into the record the expert's

pellant must be awarded a new trial. *See Commonwealth v. Davis, supra; Commonwealth v. Seese, supra; cf. Kozak v. Struth, supra.*

## II.

■ Appellant's fourth argument is that counts I, XI, XV, XVI,[7] and XVII of the information should have been dismissed as they were barred by the statute of limitations.

The trial court, in denying appellant's motion to dismiss, reasoned that 42 Pa.C.S.A. § 5554(3) tolled the running of the statute of limitations on all counts until the victim reached the age of maturity.[8] We find the trial court's reliance on Section 5554(3) to dismiss appellant's contentions entirely was misplaced.

■ In *Commonwealth v. Guimento,* 341 Pa.Super. 95, 491 A.2d 166 (1985), this Court held that criminal liability may not be imposed upon acts committed outside the limitations period. *See also* 42 Pa.C.S.A. § 5552. Nor can the legislature enact a law which extends the statute of limitations so as to revive a case for which the statutory period has already run, as such a statute would be violative of the *ex post facto* clause of Article 1 Section 17 of the Pennsyl-

opinion as to the victim's credibility and when the prosecutor reinforced that evidence on re-direct examination.

7. Count XVI relates to the terroristic threats charge which will be addressed in Section III, *infra.*

8. § 5554. Tolling of Statute
Except as provided by Section 5553(e) (relating to disposition of proceedings within two years), the period of limitations does not run during any time when:
    (3) a child is under 18 years of age, where the crime involves injuries to the person of the child caused by the wrongful act, or neglect, or unlawful violence, or negligence of the child's parents....
(As amended 1985, July 10, P.L. 193, No. 49, § 1, effective in 60 days).
The 1985 amendment added subsection (3) which tolled the running of the statute of limitations on those acts occurring on or after September 8, 1983.

vania Constitution. *Id.*, 341 Pa.Superior Ct. at 98, 491 A.2d at 168. *Cf. Maycock v. Gravely Corp.*, 352 Pa.Super. 421, 508 A.2d 330 (1986) (after action has become barred by an existing statute of limitations, no subsequent legislation will remove the bar or revive the action).

■ However, where the legislature amends a statute of limitations to provide a longer limitations period or enacts a statute which tolls the running of the statute of limitations before the prior limitations period has expired, in the absence of language in the statute to the contrary, the amendments will be construed to apply so as to extend the period within which the prosecution is to be commenced. *See Commonwealth v. Harvey*, 374 Pa.Super. 289, 542 A.2d 1027 (1988) (the five year statute of limitations for rape, 42 Pa.C.S.A. § 5552(b) applies prospectively to any prosecution commenced after its effective date on a cause of action which has not already expired regardless of whether the crime for which the prosecution is commenced occurred prior to or after the effective date of the act).

Prosecutions for statutory rape, incest and corruption of minors must commence within two years of the date of the offense. 42 Pa.C.S.A. § 5552(a). We find, based upon the face of the record, that the applicable statute of limitation periods as to count I (statutory rape—summer 1980–1981) and count XI (incest—summer 1980–1981) expired prior to the adoption of 42 Pa.C.S.A. § 5554(3); and therefore, those counts must be dismissed.

■ On the other hand, at least some of the criminal acts upon which count XV (corruption of minors—summer 1980 through November 1985) and count XVII (incest—summer 1980 through November 5, 1985) were predicated occurred within the limitation period. Therefore, on remand the information should be amended to exclude allegations relating to acts committed outside the limitations period. Pa.R. Crim.P. 150; Pa.R.Crim.P. 225(b)(3); *Commonwealth v.*

*Allem,* 367 Pa.Super. 173, 532 A.2d 845 (1987); *Commonwealth v. Niemetz,* 282 Pa.Super. 431, 422 A.2d 1369 (1980).[9]

## III.

■ Appellant's sixth and final argument is that the Commonwealth failed to prove with a reasonable degree of certainty, the approximate date of the commission of the offense of terroristic threats (count XVI). Therefore, appellant argues, the act may have been committed outside the limitations period and would have been barred.

In *Commonwealth v. Devlin,* 460 Pa. 508, 333 A.2d 888 (1975), our Supreme Court ruled that as a criminal defendant, appellant has a right *both* to be tried within the statutory period *and* to be afforded the benefit of responding to charges fixed with reasonable certainty to a specific date within that statutory period. *Commonwealth v. Devlin, supra; Commonwealth v. Levy,* 146 Pa.Super. 564, 23 A.2d 97 (1941). For purposes of ensuring the appellant's right to sufficiently specific charges so he can adequately prepare a defense, it has been held that testimony establishing a continuous course of conduct over a period of time satisfies the appellant's due process rights. *Commonwealth v. Niemetz, supra.*

In the instant case, the information itself was facially defective as it did not contain *any* date or time period as to

9. The effective date of 42 Pa.C.S.A. § 5554(3) was September 8, 1985. As the statute of limitations had not yet expired as to acts committed on or after September 8, 1983, and 42 Pa.C.S.A. § 5554(3) tolled the running of the statute of limitations period from September 8, 1985, to November 13, 1985, when the instant proceedings commenced, it follows that on remand the information should be amended to include only incidents of incest or corruption of minors occurring on or after September 8, 1983.

   We note further that although criminal liability may not be imposed upon acts committed outside the limitations period, evidence of criminal acts committed outside the limitations period may be admissible to corroborate evidence of those acts committed within the limitations period. *See Commonwealth v. Allem,* 367 Pa.Super. 173, 182 n. 3, 532 A.2d 845, 849 n. 3 (1987).

when the offense of terroristic threats occurred. Moreover, the only evidence presented at trial which related to the crime of terroristic threats, was the victim's testimony:

Q. Well, you told us that, but was there ever any comments about his relationship with your mom in terms of getting in the middle of it?

A. He said he would kill me.

(N.T. 7/7/86 at p. 18). While this testimony establishes the elements of the crime of terroristic threats, the record is devoid of any testimony as to when the above terroristic threat was made.[10] As no testimony was presented indicating a continuous course of conduct with regard to this particular charge, we find that neither the reasonable certainty requirement nor the statute of limitations requirement were met. Hence, we are compelled to discharge the appellant on this count rather than remand to allow the Commonwealth to amend the information and proceed on the charge at a new trial.

## CONCLUSION

Based upon the foregoing, judgment of sentence is vacated and the case is remanded for further proceedings consistent with this opinion. Jurisdiction is relinquished.

WIEAND, J., concurs in the result.

10. Although neither the trial court nor the Commonwealth has directed us to any specific reference in the notes of testimony indicating either a specific date fixed with a reasonable degree of certainty, or a continuous course of conduct, we did find a vague reference to a time period in Mr. Battinieri's report. Mr. Battinieri states, "Her father continued to force her compliance by threatening to 'kill me' or himself...." (Defendant's Exhibit No. 3 at 7). A statement made in the beginning of that same paragraph suggests that the threats were made after the victim was fourteen and continued until she left in November, 1985. However, we find this vague reference is insufficient to support a conclusion that the Commonwealth met its burden of proving beyond a reasonable doubt that the terroristic threats occurred within the statutory period on a reasonably certain date.