J-S53006-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DARIN COLLINS | : | |
| | : | |
| Appellant | : | No. 481 EDA 2020 |

Appeal from the Judgment of Sentence Entered January 6, 2020
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s): CP-46-CR-0004532-2017

BEFORE: SHOGAN, J., LAZARUS, J., and PELLEGRINI, J.*

MEMORANDUM BY SHOGAN, J.: **FILED: MAY 7, 2021**

Appellant, Darin Collins, appeals from the judgment of sentence entered

following his conviction of official oppression.[1]  We affirm.

---

* Retired Senior Judge assigned to the Superior Court.

[1] The crime of official oppression is set forth in the Crimes Code as follows:

A person acting or purporting to act in an official capacity or taking advantage of such actual or purported capacity commits a misdemeanor of the second degree if, knowing that his conduct is illegal, he:

(1) subjects another to arrest, detention, search, seizure, mistreatment, dispossession, assessment, lien or other infringement of personal or property rights; or

(2) denies or impedes another in the exercise or enjoyment of any right, privilege, power or immunity.

18 Pa.C.S. § 5301.

The trial court summarized the history of this case as follows:

On February 13, 2017, [Appellant], who was a correctional officer at the Montgomery County Correctional Facility ("MCCF"), was involved in an incident, along with his co-defendants, with the victim, inmate Derrick Houlihan. The incident resulted in a misconduct report against Mr. Houlihan and a subsequent change in his classification status to disciplinary segregation, which kept Mr. Houlihan locked up for 23 hours a day, from Medium Max classification, which allowed him more movement and rights within the prison facility.

The following day on February 14, 2017, there was a physical altercation, involving [Appellant], his co-defendants, and Mr. Houlihan, which required Mr. Houlihan to receive medical attention. The correctional officers involved were later relieved of their duties.

An eight day trial commenced on October 15, 2019, at the conclusion of which, the jury found [Appellant] guilty of official oppression and not guilty of criminal conspiracy and simple assault.

Trial Court Opinion, 6/25/20, at unnumbered 1.

On January 6, 2020, the trial court sentenced Appellant to serve a term of probation of two years. This timely appeal followed. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant presents the following issues for our review:

I. THE TRIAL COURT ERRED WHEN IT FAILED TO ALLOW TRIAL COUNSEL TO CROSS-EXAMINE THE COMMONWEALTH'S EXPERT WITNESS ON THE VICTIM'S PRIOR CRIMINAL RECORD AND PRIOR PRISON DICIPLINARY RECORD DESPITE THE COMMONWEALTH'S EXPERT RELYING ON SAID INFORMATION IN FORMING THE BASIS OF HIS EXPERT OPINION.

II. THE TRIAL COURT ERRED IN ITS CHARGE TO THE JURY DEFINING THE ELEMENTS OF THE CHARGE OF OFFICIAL OPPRESSION BY TELLING THE JURY THAT OFFICIAL OPPRESSION COULD INCLUDE THE CHANGE OF STATUS IN OFFICIAL

DETENTION WHERE THE VICTIM WAS ALREADY LEGALLY DETAINED.

Appellant's Brief at 2 (full capitalization in original).

Appellant first argues that the trial court erred in failing to permit Appellant to cross-examine fully an expert witness presented by the Commonwealth. Appellant's Brief at 6-10. Specifically, the Commonwealth called Secretary of Corrections John Wetzel to testify as an expert in the area of corrections and the use of force. *Id*. at 7. Appellant contends that he was improperly prohibited from inquiring about Mr. Houlihan's prior unrelated prison misconduct, which took place in a different correctional facility. *Id*. Appellant asserts that the expert witness relied upon this information to form the basis of his opinion that Appellant used excessive force, and he should have been permitted to cross-examine the expert witness regarding Mr. Houlihan's unrelated prior misconduct. *Id*. at 9. We disagree.

"Under both the Pennsylvania and United States Constitutions, a criminal defendant has a right to confront and cross-examine the witnesses against him." *Commonwealth v. McCrae*, 832 A.2d 1026, 1035 (Pa. 2003); U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him[.]"); Pa. Const. art. I, § 9 ("In all criminal prosecutions the accused hath a right ... to be confronted with the witnesses against him[.]").

Our standard of review is well settled. "[Q]uestions concerning the admissibility of evidence are committed to the sound discretion of the trial

judge, whose rulings will not be disturbed on appeal absent an abuse of that discretion." ***Commonwealth v. Reed***, 990 A.2d 1158, 1167-1168 (Pa. 2010). The basic requisite for the admissibility of any evidence in a case is that it be competent and relevant. ***Commonwealth v. Freidl***, 834 A.2d 638, 641 (Pa. Super. 2003). The courts of this Commonwealth have repeatedly stated that evidence is admissible if the evidence logically or reasonably tends to prove or disprove a material fact in issue, tends to make such a fact more or less probable, or affords the basis for or supports a reasonable inference or presumption regarding the existence of a material fact. ***Id***.

> We are mindful that
>
> [o]n cross-examination, an attorney is entitled to question the witness about subjects raised during direct examination as well as any facts tending to refute inferences arising from matters raised during direct testimony. Similarly, an attorney may discredit a witness by cross-examining the witness about omissions or acts that are inconsistent with his testimony. However, the scope and limits of cross-examination is [sic] vested in the trial court's discretion and that discretion will not be reversed unless the trial court has clearly abused its discretion or made an error of law.

***Commonwealth v. Ogrod***, 839 A.2d 294, 322 (Pa. 2003). Further, the trial court has the power to exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence, to avoid needless waste of time. Pa.R.E. 611(a)(2).

Our Supreme Court has stated that "the purpose of expert testimony is to assist in grasping complex issues not within the ordinary knowledge, intelligence and experience of the jury." ***Commonwealth v. Zook***, 615 A.2d

- 4 -

1, 11 (Pa. 1992) (citing *Commonwealth v. Rounds*, 542 A.2d 997 (Pa. 1988)). As the Court in *Rounds* explained:

> An expert's function is to assist the jury in understanding the problem so that the jury can make the ultimate determination. If a jury disbelieves the facts upon which the opinion is based, the jury undoubtedly will disregard the expert's opinion. Likewise, if a jury accepts the veracity of the facts which the expert relies upon, it is more likely that the jury will accept the expert's opinion. At the heart of any analysis is the veracity of the facts upon which the conclusion is based. Without the facts, a jury cannot make any determination as to validity of the expert's opinion.

*Rounds*, 542 A.2d at 999.

We have reviewed the briefs of the parties, the relevant law, the certified record before us on appeal, and the trial court opinion dated June 25, 2020. The trial court's opinion adequately and accurately addressed Appellant's challenge to the trial court's limitation on cross-examination of the Commonwealth's expert witness. Trial Court Opinion, 6/25/20, at unnumbered 2-5. Specifically, we agree with the trial court's determination that the Commonwealth did not elicit direct testimony regarding Mr. Houlihan's prior misconduct, and the expert did not identify in his testimony reports of prior misconduct to be among the materials he reviewed in preparation of his opinion. Consequently, Appellant's argument that the trial court erred in failing to permit him to cross-examine the expert regarding reports of Mr. Houlihan's prior correctional facility misconduct lacks merit.

Hence, because the trial court analysis is supported by the record, we adopt its June 25, 2020 opinion as our own.[2]

Appellant next argues that the trial court erred in instructing the jury on the crime of official oppression. Appellant's Brief at 11. Appellant alleges that the trial court improperly instructed that detaining Mr. Houlihan, who was already in criminal detention, into a higher security level could constitute unlawful detention. *Id*. Basically, without any citation to legal authority, Appellant claims that the term detention does not apply to someone already in custody.

> In examining the propriety of the instructions a trial court presents to a jury, our [standard] of review is to determine whether the trial court committed a clear abuse of discretion or an error of law which controlled the outcome of the case. A jury charge will be deemed erroneous only if the charge as a whole is inadequate, not clear or has a tendency to mislead or confuse, rather than clarify, a material issue. A charge is considered adequate unless the jury was palpably misled by what the trial judge said or there is an omission which is tantamount to fundamental error. Consequently, the trial court has wide discretion in fashioning jury instructions. The trial court is not required to give every charge that is requested by the parties and its refusal to give a requested charge does not require reversal unless the appellant was prejudiced by that refusal.

*Commonwealth v. Brown*, 911 A.2d 576, 582-583 (Pa. Super. 2006) (citing

*Commonwealth v. Thomas*, 904 A.2d 964 (Pa. Super. 2006)).

---

[2] The parties are directed to attach a copy of that opinion in the event of further proceedings in this matter.

In our inquiry, we are cognizant that "when evaluating the propriety of jury instructions, this Court will look to the instructions as a whole, and not simply isolated portions, to determine if the instructions were improper." *Commonwealth v. Charleston*, 94 A.3d 1012, 1021 (Pa. Super. 2014) (citation omitted). "The trial court is free to use its own expressions as long as the concepts at issue are clearly and accurately presented to the jury." *Commonwealth v. Ballard*, 80 A.3d 380, 407 (Pa. 2013) (citation omitted). The instructions must adequately, accurately and clearly present the law to the jury and must be sufficient to guide the jury in its deliberations. *Commonwealth v. Jones*, 672 A.2d 1353, 1358 (Pa. Super. 1996).

Again, we have reviewed the briefs of the parties, the relevant law, the certified record, and the opinion of the trial court dated June 25, 2020. It is our determination that the trial court properly held the instruction presented, particularly with regard to his detention that was separate from his initial imprisonment, was appropriate. Therefore, we conclude that the opinion of the trial court correctly and adequately addressed the claim raised by Appellant. Trial Court Opinion, 6/25/20, at unnumbered 5-6. Accordingly, we adopt the trial court's opinion as our own and affirm on its basis.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/7/21

IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY
PENNSYLVANIA
CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA     :     CP-46-CR-0004532-2017

             : 

       V.               : 

             :     **481 EDA 2020**

DARIN COLLINS          :

## OPINION

**CARPENTER  J.**                             **JUNE 25, 2020**

### FACTUAL AND PROCEDURAL HISTORY

Appellant, Darin Collins ("Collins"), appeals from the judgment of sentence entered on January 6, 2020, after a jury found him guilty of official oppression.

On February 13, 2017, Collins, who was a correctional officer at the Montgomery County Correctional Facility ("MCCF"), was involved in an incident, along with his co-defendants, with the victim, inmate Derrick Houlihan. The incident resulted in a misconduct report against Mr. Houlihan and a subsequent change in his classification status to disciplinary segregation, which kept Mr. Houlihan locked up for 23 hours a day, from Medium Max classification, which allowed him more movement and rights within the prison facility.

The following day on February 14, 2017, there was a physical altercation, involving Collins, his co-defendants, and Mr. Houlihan, which required Mr. Houlihan to receive medical attention. The correctional officers involved were later relieved of their duties.

An eight day trial commenced on October 15, 2019, at the conclusion of which, the jury found Collins guilty of official oppression and not guilty of criminal conspiracy and simple assault.

### ISSUES

Collins filed a concise statement of errors complained of on appeal, pursuant to an order directing him to do so. He raised the following issues on appeal, set forth verbatim below.

1. The Honorable Court erred when it failed to allow trial counsel to cross examine the Commonwealth's expert witness on the victim's prior criminal record and prior disciplinary record, despite the Commonwealth's expert relying on said information in forming the basis of his expert opinion.

2. The Honorable Court erred in its charge to the jury defining the elements of the charge of Official Oppression by telling the jury that Official Oppression could include the change of status in official detention where the victim was already legally detained.

See, Concise Statement of Errors Complained of on Appeal 2/13/20.

## DISCUSSION

First on appeal, Collins alleges that this Court erred when it precluded defense counsel from cross-examining the Commonwealth's expert, John Wetzel, on the victim's prior criminal record and prior disciplinary record, despite Mr. Wetzel's reliance on this information in forming the basis of his opinion.

By way of background, the Commonwealth filed a Motion in Limine to Exclude the Victim's Prior Convictions and Prison Misconducts on January 13, 2019. The motion in limine was heard immediately prior to start of the trial. (Trial by Jury, V. 1, 10/15/19 pp. 22 – 26, 31). This Court ruled that there would be no mention of the victim's prison misconducts, no reference to it, and no questioning about it. Id. at 31. The Motion in Limine was granted.

On the fifth day of trial, October 21, 2019, the Commonwealth called John E. Wetzel to testify. After *voir dire*, the Court accepted Mr. Wetzel as an expert in the area of corrections and use of force. (Trial by Jury, V. 5 10/21/19 p. 218). On direct

examination, Mr. Wetzel detailed the materials he reviewed in preparation for this case. Id. at 226. He reviewed grand jury testimony; the victim's inmate history; emails from MCCF; reports submitted from MCCF; the officer log report; photos of Houlihan's injuries; photos of Houlihan's cell, cell 430; the reports and statements by the correctional officers; trial transcripts; all available video; defense expert report; the February 13th misconduct report; MCCF timeline the Standard Operating Procedures Manual of Montgomery County; the Pennsylvania Department of Corrections use-of-force policy and training curriculum. Id. at 226 – 227. Mr. Wetzel ultimately opined that the correctional officer used excessive force. Id. at 127.

On cross-examination, defense counsel questioned Mr. Wetzel about his report as follows:

> Q.    I'd like you to go to, I believe it's the third page of the report. There is a section titled "Materials Reviewed", is that correct?
>
> A.    Yes, sir.
>
> Q.    It then lists two, four, six, eight ten, twelve, fourteen, sixteen, eighteen, twenty things that you reviewed in preparation for writing the report, correct?
>
> A.    That's correct.
>
> Q.    Those twenty things form the basis of your opinion; is that correct?
>
> A.    Yes.
>
> ***
>
> [DEFENSE COUNSEL]: Your Honor, at this time I do think we need to speak to the Court outside the presence of the jury.
>
> ***
>
> Your Honor, if you recall, the Court has precluded any evidence from Mr. Houlihan's misconducts as a State Correctional inmate, and also precluded any mention of his prior criminal record except for the charge that he was on parole for at the time of this incident and the charge that was pending against him at the time of this incident. I believe that was your ruling.

> If you recall, I suggested to the Court that at some point I believed that the Commonwealth was going to open the door to introduction of that evidence. I believe that has now occurred.
>
> THE COURT: In what way?
>
> [DEFENSE COUNSEL]: Since those items were reviewed by Secretary Wetzel to help form the basis of his opinion. I think it's clear under the law and the Rules of Evidence that I can cross-examine a witness on whatever materials and things he learned and used to form the basis of his opinion.
>
> THE COURT: So you are saying that in that list of items is some mention of the misconduct in the other prisons?
>
> [DEFENSE COUNSEL]: Yes, sir.
>
> THE COURT: Read out to me which one it is.
>
> [DEFENSE COUNSEL]: It says "2/14/17, PA DOC misconduct report, Houlihan."

(Trial by Jury, V. 6, 10/22/19 pp. 18 – 19). The Commonwealth responded that that particular report was given to Mr. Wetzel because at the time it provided Mr. Wetzel with the materials to review the Commonwealth did not know how the Court would rule on the matter. Id. at 19. Second, the specific report was the same evidence the Court found to be irrelevant to Collins' justification defense because there was no evidence that Collins knew of the report prior to the February 14th physical altercation.[1] Id. And lastly, the Commonwealth noted that Secretary Wetzel did not refer to it at all during the course of his testimony. Id. This Court ruled that defense counsel could not cross-examine Mr. Wetzel on this report. Id. at 20.

It is well settled that the scope and the limits of cross-examination are within the trial court's discretion, and the trial court's ruling with regard to the limits of cross-examination will not be reversed absent a clear abuse of that discretion or an error of law. Commonwealth v. Glenn, 675 A.2d 343, 345 (Pa.Super. 1996). In this case, there was no abuse of discretion.

---

[1]    See, Trial by Jury, V. 1., 10/17/19 p. 22 – 26.

Notably, the Commonwealth did not elicit any direct testimony regarding this misconduct report. The only mention of the misconduct report defense counsel was referring to was in Mr. Wetzel's report itself. He did not even specifically mention the DOC report identified by defense counsel when he testified to the materials he reviewed in preparation for the case. The DOC report did not come up during his testimony at all.

Second, Collins asserts that this Court erred in its charge to the jury defining the elements of charge official oppression by telling the jury that official oppression could include the change of status in official detention where the victim was already detained.

In charging the jury on the charge of official oppression, this Court stated as follows:

> I am going to start with official oppression. This is the definition of that particular offense:
>
> That the defendant subjected Derrick Houlihan to unlawful mistreatment or infringement of personal rights, *or unlawfully detained him separately from his initial imprisonment, or impeded Mr. Houlihan in the exercise or enjoyment of a right by the conduct of that particular defendant.*
>
> Second, that the defendant was acting in an official capacity as a correctional officer.
>
> Third, that the defendant knew that the conduct was illegal. Now in determining whether the conduct was illegal, I'm not speaking of illegal in the sense that the conduct is defined by a separate criminal offense. Rather, illegal in this context means improper actions taken in their official capacity and amounting to an abuse of power.

(Trial by Jury, V. 7, 10/23/19 pp. 24 – 25).

Initially, this Court notes that this claim of alleged error was properly preserved. Defense counsel raised his objection in chambers, and put it on the record. Id. at 35. Specifically, he objected to the official oppression charge, the part addressing detention. Id. at 35 – 36. This Court overruled the objection. Id. at 36.

When evaluating jury instructions, this Court considers whether the instructions as a whole were prejudicial. *Commonwealth v. Carson*, 913 A.2d 220, 255

(Pa. 2006). A trial court is not required to use any particular jury instructions, or particular forms of expression, so long as those instructions clearly and accurately characterize the relevant law. *Id.*

In this case, the objectionable portion of the charge was when this Court instructed the jury, *inter alia*, that if the defendant subjected the victim to unlawful detainment separate from his initial imprisonment or impeded Mr. Houlihan in the exercise or enjoyment of a right, the defendant could be found guilty of official oppression. This Court believes that it was quite clear that it was in reference to the change in classification to solitary confinement, wherein the testimony showed he was deprived of rights that he was afforded in his previous Medium Max security classification. It seems clear from the plain meaning of the words that official oppression can include the change in status in official detention when that change deprives the victim of his rights he previously was entitled to in a prior classification status.

## CONCLUSION

Based on the forgoing analysis, Collins' judgment of sentence imposed on January 6, 2020, should be affirmed.

**BY THE COURT:**

_____
**WILLIAM R. CARPENTER      J.**
**COURT OF COMMON PLEAS**
**MONTGOMERY COUNTY**
**PENNSYLVANIA**